UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| Athena Botanicals, LLC (a Colorado Limited Liability Company); and San Juan Hemp Company, LLC (a Colorado Limited Liability Company) | Case No. **COMPLAINT** Honorable Judge _____ |
| Plaintiffs, | |
| v. | |
| Green Earth Technologies, L.L.C. (an Arizona Limited Liability Company); HALO Laboratories LLC (an Arizona Limited Liability Company); and David Vindici, an individual | |
| Defendants, | |

Plaintiffs Athena Botanicals, LLC ("Athena") and San Juan Hemp Company, LLC ("SJHC") (collectively "Plaintiffs"), by and through their undersigned attorneys, hereby bring their Complaint against Green Earth Technologies, L.L.C. ("GET"), HALO Laboratories, LLC ("HALO") and David Vindici ("Vindici") (and collectively "Defendants") as follows:

**PARTIES**

1.     Plaintiff Athena is a Colorado limited liability company with a principal place of business in Montrose, Colorado.

2.     Athena operates a hemp processing facility in Montrose, Colorado.

3.     Athena is a citizen of Colorado, in that its owners and members are citizens and domiciliaries of Colorado.

4.      Plaintiff SJHC is a Colorado limited liability company with a principal place of business in Montrose, Colorado.

5.      SJHC operates a hemp farm in Montrose, Colorado.

6.      SJHC is a citizen of Colorado, in that its owners and members are citizens and domiciliaries of Colorado.

7.      Upon information and belief, Defendant GET is an Arizona limited liability company with a principal place of business of Phoenix, Arizona.

8.      Upon information and belief, GET is a citizen of Arizona, in that its owners and members are citizens and domiciliaries of Arizona.

9.      Upon information and belief, Defendant HALO is an Arizona limited liability company with a principal place of business of Scottsdale, Arizona.

10.      Upon information and belief, HALO is a citizen of Arizona, in that its owners and members are citizens and domiciliaries of Arizona.

11.      GET and HALO are collectively referred to as the "Corporate Defendants" in this Complaint.

12.      Upon information and belief, Defendant Vindici is a citizen of the United States of America and is domiciled in the State of Arizona.

## JURISDICTION AND VENUE

13.      Diversity of citizenship exists between Plaintiffs and the Defendants, under 28 U.S.C. § 1332.

14.      The amount of damages sought in this Complaint exceeds $75,000.00.

15.     Venue is proper in this District Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district, in that the claims relate to hemp farming and processing operations in this district, and involve a prospective joint venture negotiated, and to be performed, in this district.

### PROPOSED JOINT VENTURE

16.     In or about February 2019, Defendant Vindici introduced himself to Plaintiffs' principal, Jerrod Young, on the social-media platform LinkedIn, and proposed that Vindici and the Corporate Defendants form a joint-venture with Plaintiffs (the "Proposed Joint Venture").

17.     In February 2019, Plaintiffs were embarking on their first hemp harvest and had limited experience with the growth, cultivation, processing, and sale of hemp, which facts were known to Vindici at the time of the Proposed Joint Venture.

18.     Vindici introduced himself as an experienced business man, with specialized knowledge of the hemp industry, capable of guiding Plaintiffs through their first harvest.

19.     Soon after introducing himself to Plaintiffs, Vindici presented them with a photograph of a lavish office building in Scottsdale, Arizona, which he represented as his own office building.  Plaintiffs have come to learn that that building is, in fact, a virtual office building, which can be rented on a *per diem* basis, and does not belong to Vindici or any entity with which he is affiliated.

20.     As part of the Proposed Joint Venture, Vindici initially represented to Plaintiffs that he would purchase equipment for the Athena processing facility and for the SJHC farm, in the amount of at least $300,000.00 to $400,000.00.  In consideration of those investments, Vindici asked to receive a portion of the revenue generated from the Plaintiffs' first hemp harvest, in the fourth fiscal quarter of 2019.

21.     In or about April 2019, Vindici presented Plaintiffs with a proposed Letter of Intent, to be executed by Plaintiffs and Corporate Defendants (the "Letter of Intent").

22.     The Letter of Intent purported to give HALO a 30% ownership interest in Athena, and to give GET a 45% interest in SJHC, but did not commit the Defendants to investing any specific dollar amount in Plaintiffs' operations.

23.     Plaintiffs did not execute the Letter of Intent, and asked Vindici to explain what Plaintiffs would receive in exchange for granting the Corporate Defendants ownership interests in their businesses, by email from Young to Vindici of April 16, 2019.

24.     Vindici responded to Young via email on April 17, 2019 and presented a "Proposed Investment Subtotal" of $602,170.00, which he explained would be in exchange for "45% in the farm and 30% in the [processing facility]."

**VINDICI FAILS TO FULFILL PROMISED INVESTMENT**

25.     In fact, Vindici never invested $602,170.00 in Plaintiffs' businesses, nor did he invest anywhere close to that amount.

26.     Vindici ultimately invested $160,000.00 in Plaintiffs' harvest and processing facility, consisting of the following: (i) $70,000.00 in seeds; (ii) $20,000.00 in farm labor;

and (iii) 50% of a wiped film machine (with Plaintiffs funding the additional 50% of the machine), amounting to an additional $70,000.00.

27.     The wiped film machine (jointly purchased by Plaintiffs and Defendants) is useful for processing large amount of distillate.  Plaintiffs agreed to purchase this machine, with Defendants, in reliance on Defendants' promises to invest significant capital towards a much larger harvest, making the purchase of this machine worthwhile.  Instead, because Defendants have not fulfilled their promises, Plaintiffs have no use for this machine, as they have not cultivated sufficient hemp to make using this machine necessary or worthwhile.

28.     Plaintiffs had agreed to purchase feminized seeds needed for their harvest from a purveyor in Grand Junction at a price of $0.60 per seed, and Vindici represented to Plaintiffs that he would fund that purchase.  However, Vindici delayed delivering the funds for such a lengthy period of time, that the Grand Junction merchant had sold the seeds to another buyer by the time the funds materialized.  Plaintiffs were then forced to find another seed merchant, and the least expensive source they could find then was $1 per seed. Vindici ultimately came up with the money but his investment would have been a lot less if he would have been able to pay $0.60 instead of $1 per seed.

29.     Vindici's delay in funding the seeds also meant that the seeds could not be planted until too late in the season—by two weeks—and so the seeds were planted later than would have been desirable.

30.     Plaintiffs have been damaged, in an amount to be proven at trial, by Vindici's

conduct resulting in this late planting.

## FARM LABOR

31.     Vindici visited the farm on or about June 11, 2019.  By then, it had become

apparent that the hemp harvest was in poor condition, in large part because the farm

had become overpopulated with weeds, although the problem was still manageable at

that time.

32.     Plaintiffs discussed the poor condition of the harvest with Vindici, and Vindici

proposed that he would fund the costs of farm labor for purposes of removing the

weeds. Specifically, Vindici directed Plaintiffs to hire as many people as they could to

pull weeds, and committed to funding labor for the amount of $12 per hour, in cash, for

a total amount of up to $5,000.00 per week, with an agreement to consider additional

funding, when and if it became necessary.

33.     After paying the first four labor invoices—for a total of $20,000.00—Vindici

refused to pay for any additional labor.

34.     As a result of Vindici's failure to fund the weeding labor as promised, Plaintiffs

have been damaged in an amount to be proven at trial, as the harvest suffered from the

presence of too many weeds.

35.     Plaintiffs' 2019 hemp harvest yielded only approximately 440 pounds of biomass,

which is far less than the Plaintiffs had expected, and is far less than the amount of

biomass that could have been yielded had they not been deceived by Defendants.

## WASTED CAPITAL AND LABOR ON NON-WORKING GILSON MACHINE, ORDERED BY VINDICI

36.     In or about February 2019, Vindici told Plaintiffs he was purchasing a Gilson processing machine, for use in the processing facility, designed to process large amounts of distillate into 0-THC distillate (the "Gilson Machine").

37.     Vindici held himself out as knowledgeable about the Gilson Machine, saying that he owned two himself, and he represented to Plaintiffs that the Gilson Machine would allow Plaintiffs to achieve a significantly better return on their distillate sales, than otherwise would have been possible.

38.     Plaintiffs relied on Vindici's representations concerning the Gilson Machine.

39.     In fact, the Gilson Machine—ordered by Vindici at his insistence—never worked, and Plaintiffs estimate they have spent $50,000.00 on labor and chemicals trying to make it work.

40.     By investing significant labor hours into the non-working Gilson Machine, Plaintiffs lost time that could have otherwise been devoted to facilitating a successful harvest and towards processing and selling distillate.

41.     Vindici ultimately returned the Gilson Machine, and got back his money back.

## VINDICI SENDS 88 KG OF CRUDE TO PLAINTIFFS FOR PROCESSING, REFUSES TO PAY FOR PROCESSING, AND INSTEAD TELLS PLAINTIFFS THEY ARE REQUIRED TO BUY THE CRUDE FROM HIM AT RETAIL PRICES

42.     On or about July 17, 2019, Vindici shipped 88 kilograms of Full Spectrum Oil ("FSO") to Plaintiffs in Montrose, along with additional "mother liquor," which

Plaintiffs determined was too high in pesticides to have any commercial use.  Vindici directed Plaintiffs to process the FSO and return it to him.

43.     Plaintiffs processed approximately 56 kilograms of the FSO for Vindici, and invoiced him for that processing work.

44.     Vindici has not paid for this processing work, despite due demand, and instead has taken the position that Plaintiffs must now purchase the FSO from him.

45.     Specifically, on July 31, 2019, Vindici sent an email to Plaintiffs purporting to charge them $177,600 for the FSO, which they had never agreed to buy in the first place.

46.     To this day, Plaintiffs have no interest in purchasing this FSO and deny that they are required to do so.  As Young told Vindici by email of August 1, 2019:

> We never ordered any FSO from you nor do we have an
> agreement to buy any FSO from you, only to process it. You
> sent us 88 kilos of crude to process and we processed 56
> kilos before you told us to stop. This yielded 37.932 kilos of
> Distillate. Attached is the invoice for this processing.  Once
> this invoice has been paid we will gladly send you your
> processed distillate and the remaining crude.

47.     In response to Young's email, Vindici sent Young an email the next day and threatened litigation "in US District Court (Federal) Denver Colorado."  In that email, Vindici claimed damages of "more than $300k" and told Young, with respect to the threatened litigation, "Now you get [to] see what I do well."

48.     One week earlier, on July 23, 2019, Vindici represented that he had "invested" the amount of "$200k (including travel expenses) . . . into our relationship."  Vindici has

never explained the disconnect between these two valuations, presented just over one week apart.

49.     In an August 19, 2019 letter and an October 23, 2019 email, Vindici's counsel has taken the position that Plaintiffs actually owe Vindici $600,000.00, and must pay that amount to settle their dispute with him.

50.     Plaintiffs deny that they owe any payment to Defendants, and a controversy now exists between Plaintiffs and Defendants concerning what amounts, if any, the parties, or any of them, owe one another.

## VINDICI IS *ALTER EGO* FOR GET AND HALO

51.     Upon information and belief, and with respect to the relationship between GET and Vindici: (i) GET is an alter ego and/or mere instrumentality; (ii) GET was created to defeat claims against Vindici; (iii) Vindici commingled funds between himself and GET and kept inadequate records of such transfers; (iv) GET is a shell company created for Vindici to obtain insurance coverage and facilitated the misuse of funds between himself and GET; (v) GET is inadequately capitalized and Vindici transferred assets from GET to himself for non-corporate purposes and without any reasonable equivalent value being given; and (vi) an equitable result would be achieved by disregarding the corporate form.

52.     Upon information and belief, and with respect to the relationship between HALO and Vindici: (i) HALO is an alter ego and/or mere instrumentality; (ii) HALO was created to defeat claims against Vindici; (iii) Vindici commingled funds between

himself and HALO and kept inadequate records of such transfers; (iv) HALO is a shell company created for Vindici to obtain insurance coverage and facilitated the misuse of funds between himself and HALO; (v) HALO is inadequately capitalized and Vindici transferred assets from HALO to himself for non-corporate purposes and without any reasonable equivalent value being given; and (vi) an equitable result would be achieved by disregarding the corporate form.

53.     At all relevant times, Vindici, HALO and GET shared a unity of interest and ownership.  Further, Vindici controlled HALO and GET and used them as his *alter egos*.

54.     As such, the separate corporate personalities of HALO and GET do not exist.

## FIRST CLAIM FOR RELIEF
### (Negligent Misrepresentation)

55.     Plaintiffs reallege the preceding paragraphs and incorporate them as if set forth fully herein.

56.     Defendants gave false information to Plaintiffs, in the course of Defendants' business, and in connection with a business transaction, specifically, the Proposed Joint Venture, and ensuing joint work during the winter, spring, and summer of 2019.  This false information includes, but is not limited to the following:

   a.   That Vindici possessed specialized knowledge of the hemp industry.

   b.   That Vindici was the owner of a lavish office building in Scottsdale, Arizona, and so sufficiently wealthy to fund the necessary expenses of Plaintiffs' hemp harvest.

c. That Defendants would purchase a significant amount of expensive equipment for Plaintiffs' processing facility and farm.

d. That HALO would only claim a 30% interest in Athena, and GET would only claim a 45% interest in SJHC if those entities contributed more than $600,000.00 towards the 2019 harvest and processing facility, whereas those entities now still claim those ownership percentages, despite never having invested anywhere close to $600,000.00.

e. That Defendants would fund the labor costs necessary for removing weeds from the farm, to prevent the farm from becoming overrun with weeds.

f. That Vindici was experienced and knowledgeable about use of the Gilson Machine, and would ensure that the machine ran smoothly and would benefit the Plaintiffs' businesses.

g. That Defendants would secure seeds for the harvest in a timely fashion, and for the price ($0.60 per seed) that the Plaintiffs had negotiated.

h. That Defendants would pay Plaintiffs to process 88 kilograms of FSO, sent by Defendants to Plaintiffs, rather than demand that Plaintiffs buy that FSO (shipped for processing) from Defendants at retail price.

57. Defendants were negligent in obtaining and/or communicating the false information.

58. Defendants provided the false information with the intent that Plaintiffs would act in reliance on the information.

59.     Plaintiffs did rely on the information.

60.     The reliance caused damages to Plaintiffs.

## SECOND CLAIM FOR RELIEF
### (Fraudulent Concealment)

61.     Plaintiffs reallege the preceding paragraphs and incorporate them as if set forth fully herein.

62.     Defendants concealed past or present facts that they had a duty to disclose. Without limitation, those concealed facts include:

a.   That Vindici did *not* possess specialized knowledge of the hemp industry.

b.   That Vindici was *not* the owner of a lavish office building in Scottsdale, Arizona.

c.   That Defendants would *not* purchase a significant amount of expensive equipment for Plaintiffs' processing facility and farm.

d.   That HALO would claim a 30% interest in Athena, and GET would claim a 45% interest in SJHC whether or not those entities contributed more than $600,000.00 towards the 2019 harvest and the processing facility.

e.   That Defendants would *not* fund the labor costs necessary for removing weeds from the farm, to ensure a profitable harvest.

f.   That Vindici was *not* experienced and knowledgeable about use of the Gilson Machine, and would *not* ensure that the machine ran smoothly and would benefit the Plaintiffs' business.

g.   That Defendants would *not* secure seeds for the harvest in a timely fashion.

h. That Defendants would *not* pay Plaintiffs to process 88 kilograms of FSO, sent by Defendants to Plaintiffs, and would instead demand that Plaintiffs buy that FSO (shipped for processing) from Defendants at retail price.

63.     The facts that Defendants concealed were material.

64.     Defendants concealed these facts with the intent of creating a false impression in the minds of Plaintiffs.

65.     Defendants concealed these facts with the intent that Plaintiffs would take a course of action that they might not have taken had they known the true facts. Without limitation, had Defendants not concealed material facts from Plaintiffs, Plaintiffs would have secured capital from other, more reputable, sources, and/or would have made alternative plans for their harvest. With respect to the 88 kilograms of FSO, Plaintiffs would not have processed any portion of that FSO, had Plaintiffs known that Defendants would (after directing Plaintiffs to process it), instead, refuse to pay for that processing work, and insist that Plaintiffs buy that FSO from Defendants instead.

66.     Relying on the concealed information, Plaintiffs took a course of action—continued partnership with Defendants—that they otherwise would not have taken.

67.     Plaintiffs' reliance was justified.

68.     Plaintiffs' reliance caused damages, in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
**(Declaratory Judgment)**

69.     Plaintiffs reallege the preceding paragraphs and incorporate them as if set forth fully herein.

70.     There is a substantial controversy between Plaintiffs, on the one hand, and Defendants, on the other hand, in that Plaintiffs believe Defendants are obligated to pay Plaintiffs for the processing work Plaintiffs have performed to date, and that Plaintiffs are *not* obligated to purchase that FSO from Defendants.  An additional controversy exists as between Plaintiffs and Defendants, in that Defendants have taken the position that they own some or all of the 2019 hemp harvest, despite not fulfilling their promises to Plaintiffs, whereas Plaintiffs contend that Defendants do not own any portion of this harvest, as Defendants have not fulfilled their promises to Plaintiffs.

71.     These controversies are of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

72.     Plaintiffs stand to suffer an actual or imminent injury, by reason of Defendants' wrongful actions, that can be addressed by judicial relief.

73.     As such, this Court should issue a declaratory judgment, pursuant to 28 U.S.C. § 2201, requiring Defendants to pay Plaintiffs for the processing work that Plaintiffs have performed, and ruling that Plaintiffs are *not* obligated to purchase the FSO from Defendants.  This Court should also issue a declaratory judgment that Plaintiffs own their businesses free and clear of any purported interest(s) of the Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against Defendants for damages in an amount to be proven at trial, and for interest pursuant to 28 U.S.C. § 1961(a).

Plaintiffs seek entry of a declaratory judgment, pursuant to 28 U.S.C. § 2201, for the relief set forth above.

Plaintiffs respectfully request that this Court issue an order granting any other and further relief this Court deems just and appropriate.

## Demand for Jury Trial

Plaintiffs hereby request a trial by jury on all issues properly tried to a jury pursuant to Federal Rules of Civil Procedure 38 and 39 and other applicable law.

Respectfully submitted this 19th day of November 2019.

**MICHAEL BEST & FRIEDRICH, LLP**

S/*PATRICK J. BERNAL*
Patrick J. Bernal
8300 Arista Place
Broomfield, Colorado 80021
Telephone: (303) 800-1580
Fax: (855) 732-0199
E-mail:    pjbernal@michaelbest.com
*Attorneys for Plaintiffs*